**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

     v.                                                     1:13-CR-489

**MOFADDAL M. MURSHED, and**
**AHMED A. ALGAHAIM,**

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


# DECISION and ORDER

**I.    INTRODUCTION**

Defendants Mofaddal M. Murshed and Ahmed A. Algahaim were each found guilty after a jury trial of fraud offenses concerning misuse of benefits under the Supplemental Nutrition Assistance Program ("SNAP"), in violation of 18 U.S.C. § 371 and 7 U.S.C. § 2024(b) & (c) .

At sentencing, Defendant Murshed was assessed a United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") base offense level of six, *see* U.S.S.G. § 2B1.1(a)(2), and received a twelve-level increase based on the $340,509 loss for which he was responsible. *See id.* § 2B1.1(b)(1)(G), *see also* Murshed PSR, ¶ 29. This brought Defendant Murshed's adjusted offense level to eighteen. *See United States v. Algahaim*, 842 F.3d 796, 799 (2d Cir. 2016). In criminal history category I, Defendant Murshed's adjusted offense level yielded a Guidelines sentencing range of twenty-seven to thirty-three

1

months. The Court imposed a sentence of thirty months imprisonment. *Id.*

Defendant Algahaim was also assessed a base offense level of six under U.S.S.G. § 2B1.1(a)(2), and received a ten-level increase based on the $130,612 loss for which he was responsible. *See* U.S.S.G. § at § 2B1.1(b)(1)(F); *see also* Algahaim PSR, ¶ 35. This brought Defendant Algahaim's adjusted offense level to sixteen. *See Algahaim*, 842 F.3d at 799. In criminal history category I, Defendant Algahaim's adjusted offense level yielded a Guidelines sentencing range of twenty-one to twenty-seven months. *Id.* The Court imposed a sentence of twenty-one months imprisonment. *Id.*

On appeal, the United States Court of Appeals for the Second Circuit affirmed the Defendants' convictions and sentences, but remanded the matter "to permit the [undersigned] to consider whether the significant effect of [U.S.S.G. § 2B1.1(b)(1)(F) & (G)'s] loss enhancements, in relation to the low base offense level [of U.S.S.G. § 2B1.1(a)(2)] should result in a non-Guidelines sentence." *Algahaim*, 842 F.3d at 800. After the matter was remanded, the Court ordered all parties to brief whether the Court should issue non-Guideline sentences, and, if so, what those sentences should be. Dkt. # 195, # 201. All parties, through counsel, have responded. *See* Dkt. # 202, #203, # 204. The Court has considered these submissions and, for reasons discussed below, determines not to issue non-Guideline sentences for Defendants.

## II. ANALYSIS

As an initial matter and as indicated during Defendant Algahaim's sentencing proceeding, the Court fully understood during the sentencing proceedings of both Defendants that it had the authority to issue non-Guidelines sentences. *See* Algahaim

2

Sentencing Transcript, at p. 16 ("The Court realizes the Guidelines are not mandatory, but are only something to guide the Court in sentencing, as well as all the other factors the Court has to consider."). The Court was also cognizant of well established authority allowing a non-Guidelines sentence when the Court disagreed with a policy behind the Guidelines or found the 18 U.S.C. § 3553(a) factors to be a more appropriate basis for imposing a sentence. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007)(a district court may vary from the advisory Guideline range based upon a policy disagreement with the Guidelines or based upon the court's assessment of the factors in 18 U.S.C. § 3553(a)).

Second, even though Guidelines § 2B1.1(b)(1)'s monetary loss amounts increased Defendant Murshed's offense level from six to eighteen, and increased Defendant Algahaim's offense level from six to sixteen, the Court would have imposed the same sentences if it had imposed non-Guidelines sentences. Both defendants engaged in criminal conduct that the Court finds to be very serious. Defendant Murshed was responsible for a $340,509 loss, and Defendant Algahaim responsible for a $130,612 loss, arising from a government program designed to aid the nutritional needs of the economically disadvantaged. The fraud scheme was far reaching, and negatively impacted many SNAP beneficiaries and the community surrounding the store where the Defendants and their co-conspirators operated. As described in Defendant Algahaim's Pre-Sentence Investigative Report, more than 80 SNAP beneficiaries admitted to engaging in the fraud at the store where Defendants' operated, exchanging their SNAP benefits for cash and using their new-found monetary recoveries to purchase prohibited and/or illicit items:

> The confidential informants reported they had engaged in fraudulent SNAP transactions at D&D prior to December 2012. Over the next three months, law enforcement agents interviewed over eighty SNAP beneficiaries who also

3

> admitted to selling their SNAP benefits for cash at D&D, and/or purchasing prohibited items with their benefits. Prohibited items the clerks at D&D allowed to be purchased with SNAP benefits included hot or prepared foods, beer, cigarettes, or pet food. This was done in exchange for a higher amount, usually double the cost of the item, being charged to their benefit card (for example, a sandwich that cost $6.00 would be billed as $12.00 on the benefits card). . . . Those interviewed indicated D&D had been engaging in SNAP benefit fraud for a long period of time; one stated they had done so "for years." Most reported they had heard about the scheme on the street, but some reported they were approached by the clerks at the store during a purchase and asked to sell their food stamps, or saw people in front of them in line at the store doing so and thereafter were allowed to sell their own benefits. Others reported D&D also sold alcohol and cigarettes to minors on a daily basis without requiring identification. . . . Another beneficiary interviewed by police indicated when someone entered the store, the clerks would ask him or her if he or she had food stamps and then attempt to "negotiate the price." Others reported the store was also a "hang out for drug dealers and they would deal in the store," and that they also sold "loosies"' (loose cigarettes) for $1.00.

Algahaim PSR ¶¶ 14-15. The scheme preyed upon the vulnerabilities of the poor community in the area.

And Defendants' crimes were accomplished with a good deal of planning and deceit. Defendants and their co-conspirators devised ways to avoid drawing attention to their scheme, including by generally keeping transactions below $100 and by using uneven dollar transaction amounts. Defendants also encouraged co-conspirators to drive the beneficiaries to other stores, or to use beneficiaries' SNAP cards at other stores themselves, to purchase and bring back merchandise to the store where Defendants worked, giving the beneficiaries approximately 50 cents on the dollar. The Defendants personally debited beneficiaries' SNAP cards at the store where they operated in exchange for cash on many occasions, and were also present when their co-conspirators did so.

The Defendants' sentences were not driven solely by the losses caused by each, but by the combination of the amount of the losses, the effect of the scheme on the SNAP

4

beneficiaries and the surrounding community, and the secretive and elaborate way the scheme was perpetrated.  The Court finds that the sentences imposed on the Defendants were necessary in order to deter the Defendants and others from committing similar offenses, to address the seriousness of the Defendants' crimes, and to comply with the sentencing purposes set forth in Section 3553.  Accordingly, even considering what the Circuit describes as the significant effect of U.S.S.G. § 2B1.1(b)(1)(F) & (G)'s loss enhancements in relation to the low base offense level of U.S.S.G. § 2B1.1(a)(2), and assuming *arguendo* that the Court deems it appropriate to issue non-Guidelines sentences, those sentences would be no different than the Guidelines sentences imposed in this matter.

## III.    CONCLUSION

For the reasons discussed above, the Court, on remand, finds no basis to resentence Defendants Mofaddal M. Murshed or Ahmed A. Algahaim.

**IT IS SO ORDERED.**

Dated: April 26, 2017

Thomas J. McAvoy
Senior, U.S. District Judge